UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**RAYMUNDO ZAMORA,**

                Plaintiff,

**vs.**                        **CASE NO.** _____

**WEST SHORE OASIS LLC**
**(a Delaware company),**

**and**

**RESIDENT ADVOCATE LLC**
**(a Maryland company),**

**and**

**HUNTER WARFIELD, INC.**
**(a Maryland corporation),**

                Defendants.
_____/

## COMPLAINT
**JURY DEMAND**

## INTRODUCTION

1.    Plaintiff alleges Defendants knowingly continue to attempt to collect an illegitimate debt from Plaintiff in violation of the Fair Debt Collection

Practices Act, 15 U.S.C. § 1692 *et seq*. ("FDCPA") and the Florida Consumer

Collection Practices Act, Fla. Stat. § 559.55 *et seq*. ("FCCPA").

## JURISDICTION AND VENUE

2.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331, 1337, 1367

and 15 U.S.C. § 1692k and15 U.S.C. § 1681.  Venue in this District is proper

because the transactions giving rise to the allegations occurred in this District and

the Defendants reside in this District.

## PARTIES

3.     Plaintiff, Raymundo Zamora ("Mr. Zamora") is a natural person and

a citizen of the State of Florida.

4.     Plaintiff leased an apartment from Defendant, West Shore Oasis

LLC in Tampa, Florida in the apartment complex -- Grand Oasis at Carrollwood.

5.     Defendant, West Shore Oasis LLC ("West Shore Oasis" or "the

Creditor") is a Delaware company with its principal place of business and

corporate offices in Boston, Massachusetts. At all times relevant, West Shore

Oasis owned the Grand Oasis at Carrollwood apartment complex.

6.     The Creditor is a person as that term is defined by Fla. Stat. §

1.01(3).

7.     The FCCPA applies to any "person" collecting or attempting to

collect a consumer debt. *E.g., Gann v. BAC Home Loans Servicing LP*, 145 So. 3d

906 (Fla. 2d DCA 2014); *Schauer v. General Motors Acceptance Corp.*, 819 So. 2d 809, 811-12 (Fla. 4th DCA 2002).

8.    Defendant, Resident Advocate LLC ("Resident Advocate") is a Maryland company with its principal place of business and corporate headquarters in Tampa, Florida.

9.    Resident Advocate is a "debt collector" as that term is defined in the FDCPA and FCCPA.

10.    Defendant, Hunter Warfield, Inc. ("Hunter Warfield") is a Maryland corporation with its principal place of business and corporate headquarters in Tampa, Florida.

11.    Hunter Warfield is a "debt collector" as that term is defined in the FDCPA and FCCPA.

12.    Any reference hereafter to "the Debt Collectors" refers to Hunter Warfield and Resident Advocate.

13.    The Creditor hired or otherwise retained the Debt Collectors to collect an alleged debt from Plaintiff on its behalf.

14.    All acts of omission of the Debt Collectors were within the scope of its agency with the Creditor.

15.    The Debt Collectors regularly use the mail and telephone in businesses the principal purpose of which is the collection of debts.

16.    The Debt Collectors regularly collect or attempt to collect debts for other parties.

17.    Because all actions of the Debt Collectors were taken on behalf of and under the control of the Creditor, the Creditor is vicariously liable to Plaintiff for the Debt Collectors' violations of the FCCPA.

## FACTUAL ALLEGATIONS

18.    Defendants sought and continue to seek to collect from Plaintiff an alleged debt arising from transactions incurred for personal, family, or household purposes. Specifically, Defendants are attempting to collect monies allegedly owed pursuant to a residential apartment lease.

19.    On or about April 16, 2024, Plaintiff and two co-residents (collectively, "the Residents") signed a one-year lease with the Creditor and signed an Early Termination Lease Contract Addendum on or about June 18, 2024 ("the Lease").

20.    Per the terms of the Lease, the Residents paid a security deposit of $950.00 upon the signing of the lease.

21.    Per the terms of the Lease, in the event of early termination, the Residents were responsible for a $2,800.00 early termination fee.

22.    On or about December 3, 2024, the Residents terminated the lease contract early by submitting a Notice of Intent to Move Out and listed a move out date of December 31, 2024.

23.     On or about February 20, 2025, the Creditor informed the Residents that they owed $2,731.09.

24.     The Residents disputed this amount with the Creditor.

25.     The Creditor then sent the Residents to collections without providing any explanation as to how it had arrived at a balance of $2,731.09.

26.     On March 18, 2025, Resident Advocate sent a collection letter to Plaintiff demanding Plaintiff pay $2,731.09.

27.     On March 19, 2025, the Creditor finally sent the Residents a Final Account Statement showing how it arrived at the balance of $2,731.09.

28.     The Final Account Statement alleges outstanding charges of $3,681.09.

29.     After applying the $950.00 deposit, the Final Account Statement alleged a balance due of $2,731.09.

30.     The Final Account Statement included illegitimate fees.

31.     Specifically, the Final Account Statement included a Lease Termination Fee of $2,896.00, which is $96.00 more than the amount allowable in the terms of the lease.

32.     Specifically, the Final Account Statement included a rent charge of $1,499.71, more than the $1,448.00 rent stated in the lease, and Creditor only reversed $1,448.00 of the rent charge leaving $51.71 of illegitimate rent include in the move out balance.

33.     Specifically, the Final Account Statement included $284.64 in utility charges for January 2025.

34.     Specifically, the Final Account Statement included cleaning fees for normal wear and tear.

35.     On or about March 31, 2025, the Residents wrote to the Creditor disputing the illegitimate fees in the Final Account Statement and sent the Creditor a check for the undisputed amount of $1,850.00, which the Creditor cashed on April 29, 2025.

36.     The Creditor failed to credit the $1,850.00 payment to the alleged balance owed and continues to attempt to collect $2,731.09 from Plaintiff.

37.     When Plaintiff continued to refuse to pay the $2,731.09, the Creditor hired Hunter Warfield to attempt to collect the alleged debt on its behalf.

38.     On June 6, 2025 and September 16, 2025, Hunter Warfield sent collection letters to Plaintiff demanding that Plaintiff pay $2,731.09.

39.     Plaintiff does not owe $2,731.09.

40.     The Creditor did not send Plaintiff notice of its intent to impose a claim on the security deposit as required by Florida Statute section 83.49(3)(A); therefore, the Creditor forfeited any right to the security deposit and did not have the legal right to keep the security deposit.

41.     Defendants' actions were willful.

## COUNT I – THE CREDITOR
### VIOLATIONS OF THE FCCPA

42.    Plaintiff incorporates Paragraphs 1 through 41 above as if fully set forth herein.

43.    The Creditor engaged in conduct which can reasonably be expected to abuse or harass the Plaintiff in violation of Fla. Stat. § 559.72(7).

44.    The Creditor asserted the legal right to retain the security deposit when it did not have the legal right to retain the security deposit because it had not complied with Florida Statute section 83.49(3)(A) when Creditor knew the legal right to retain the security deposit did not exist in violation of Fla. Stat. § 559.72(9).

45.    The Creditor continues to claim or attempt to enforce a debt that the Creditor knows is not legitimate in violation of Fla. Stat. § 559.72(9).

**WHEREFORE**, Plaintiff requests that the Court enter judgment in favor of Plaintiff and against West Shore Oasis for:

a.  Damages;

b.  Attorney's fees, litigation expenses and costs of suit; and

c.  Such other or further relief as the Court deems proper.

## COUNT II – RESIDENT ADVOCATE
### VIOLATIONS OF THE FDCPA

46.    Plaintiff incorporates Paragraphs 1 through 41 above as if fully set forth herein.

47.    Resident Advocate falsely represented the character, amount, or legal status of the Alleged Debt in violation of 15 U.S.C. § 1692e(2)(A).

48.    Resident Advocate used false representations or deceptive means to collect or attempt to collect any debt in violation of 15 U.S.C. §1692e(10).

49.    Resident Advocate attempted to collect an amount not authorized by law in violation of 15 U.S.C. § 1692f(1).

**WHEREFORE**, Plaintiff requests that the Court enter judgment in favor of Plaintiff and Resident Advocate for:

a.  Damages;

b.  Attorney's fees, litigation expenses and costs of suit; and

c.  Such other or further relief as the Court deems proper.

## COUNT III – HUNTER WARFIELD
## VIOLATIONS OF THE FDCPA

50.    Plaintiff incorporates Paragraphs 1 through 41 above as if fully set forth herein.

51.    Hunter Warfield falsely represented the character, amount, or legal status of the Alleged Debt in violation of 15 U.S.C. § 1692e(2)(A).

52.    Hunter Warfield used false representations or deceptive means to collect or attempt to collect any debt in violation of 15 U.S.C. §1692e(10).

53.    Hunter Warfield attempted to collect an amount not authorized by law in violation of 15 U.S.C. § 1692f(1).

**WHEREFORE**, Plaintiff requests that the Court enter judgment in favor of

Plaintiff and Hunter Warfield for:

      a.  Damages;

      b.  Attorney's fees, litigation expenses and costs of suit; and

      c.  Such other or further relief as the Court deems proper.

## JURY DEMAND

Plaintiff demands trial by jury.

By: /s/Kimberly H. Wochholz
Kimberly H. Wochholz – Lead Counsel
Fla. Bar No. 0092159
The Consumer Rights Law Group, PLLC
16342 Brisk Breeze Aly.
Winter Garden, FL 34787
Phone: 813-413-5710
Fax: 866-535-7199
Kim@ConsumerRightsLawGroup.com
*Counsel for Plaintiff*